### KLEIN v. PALMER et al.

### HEINS v. SAME.

Circuit Court of Appeals, Second Circuit.
April 4, 1927.

Nos. 159, 160.

1. War ⊚⟞12—Any suit to redress alleged wrongful disposition of seized alien property must be brought by United States (Trading with the Enemy Act [Comp. St. §§ 3115½a–3115½j]).

Under Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j), any suit to redress wrongful disposition of seized property must be brought by the United States, since title to seized property was vested in the United States, and any claim to property or proceeds must be made in accordance with provisions of act.

2. War ⊚⟞12—Equity will not permit recovery of property seized by Alien Property Custodian, in view of treaty.

Treaty of Versailles, art. 297 (d), (i), and annex 1, incorporated in Treaty of Berlin (42 Stat. 1939) by article 1, and article 2, subd. 1 of latter treaty. held to justify denial of relief in equity for recovery of property seized by Alien Property Custodian.

3. War ⊚⟞12—Action cannot be maintained for damage from seizure of property by Alien Property Custodian, whether acts were lawful or merely colorable.

Under Treaty of Versailles, art. 298, annexes 2 and 3, incorporated in Treaty of Berlin (42 Stat. 1939) by article 1 and article 2, subd. 1, action is not maintainable for damage resulting from seizure of property by Alien Property Custodian, whether acts of agents in making seizure were lawful or merely colorable, since under the treaty German nationals were remitted to their own country for indemnity for any wrongs for acts done by United States officials for whatsoever motives.

4. War ⊚⟞12—German national held subject to exercise of government's war powers, and property could be confiscated, whether resident or nonresident (Trading with the Enemy Act [Comp. St. §§ 3115½a–3115½j]; Const. Amends. 5, 6).

A German national as such is subject to exercise of government's war powers in accordance with Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j), and confiscation of property thereunder by government, whether resident or nonresident, did not constitute violation of Const. Amends. 5, 6.

Appeal from the District Court of the United States for the Southern District of New York.

Separate suits by Albert R. Klein and by Otto Heins against A. Mitchell Palmer and another, removed from the state court. Decree of dismissal, and plaintiffs appeal. Affirmed.

By these suits, begun in the state court and removed to the District Court, Heins and Klein, respectively, both German subjects residing in the United States during the war, the former not proclaimed and the latter as his father's heir proclaimed as an alien enemy, seek to set aside the sale by the Alien Property Custodian, defendant Palmer, and his managing director, defendant Garvan, to defendant Kern of stock in the Bosch Magneto Company, seized as the property of alien enemies, stock that eventually became the property of defendant American Bosch Magneto Corporation, organized by defendant Kern.

The bills allege that defendant Garvan, acting under instructions of defendant Palmer, unlawfully threatened plaintiff Heins that he would cause him to be indicted on some criminal charge and to be interned, and in other wrongful ways specified intimidated him, and to save himself, and in the belief in Garvan's promise to return his property after the war, Heins signed a document that the stock belonged to an alien enemy, whereas it was his own.

The bills further charge wrongful conduct in the sale itself and the eventual purchase of the assets by the newly formed defendant corporation. In view of our conclusions, it is unnecessary to set forth the details.

The equitable relief sought was the surrender of the original stock in the Bosch

Magneto Company, a following up of the proceeds thereof, and a recovery from the defendants and each of them of $5,000,000.

Motions to dismiss were granted; leave to file amended bills was denied.

Harvey T. Andrews, of New York City (Hiram C. Todd and E. Raymond Shepard, both of New York City, of counsel), for appellants.

Root, Clark, Howland & Ballantine, of New York City (Elihu Root, Jr., Leo Gottlieb, and Joseph Schreiber, all of New York City, of counsel), for appellee American Bosch Magneto Corporation.

Isidor J. Kresel and George J. Corbett, both of New York City (Frank Davis, Jr., and Seiforde M. Stellwagen, both of Washington, D. C., of counsel), for appellees Palmer and Garvan.

Rothwell, Harper. & Matthews, of New York City, for appellee Kern.

Before HOUGH, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1] On the oral argument, the attempt to sustain the claim to equitable relief was practically abandoned. Clearly, title to the seized property was vested in the United States under the Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j). Any suit to redress the alleged wrongful disposition of the seized property must be brought by the United States; any claim to the property so seized or its proceeds must be made in accordance with the provisions of that act.

[2] Moreover, the provisions of the Treaty of Versailles, art. 297 (d), (i), and annex 1, copied in the margin,[1] and incorporated in the

Treaty of Berlin (42 Stat. 1939) by article 1, and article 2, subdivision 1, of the latter Treaty, clearly justify the denial of relief in equity for the recovery of the property.

[3] It is contended, however, that, instead of dismissing the bills they should have been transferred to the law side; that an action at law is maintainable for the damage done to the plaintiffs by defendant officials and those conspiring with them purporting to act under color of office but in fact acting contrary to the obligations thereby imposed upon them and solely for their own private ends. To this contention, too, the provisions of the treaty give a complete answer.

Annexes 2 and 3 to article 298 of the Treaty of Versailles, incorporated in the Treaty of Berlin by article 1 and article 2, subd. 1, of the latter treaty (copied in the margin).[2]

---

[1] Article 297. (d) As between the allied and associated powers or their nationals on the one hand and Germany or her nationals on the other hand, all the exceptional war measures, or measures of transfer, or acts done or to be done in execution of such measures as defined in paragraphs 1 and 3 of the annex hereto shall be considered as final and binding upon all persons except as regards the reservations laid down in the present treaty.

(i) Germany undertakes to compensate her nationals in respect of the sale or retention of their property, rights or interests in Allied or Associated States.

Annex 1. In accordance with the provisions of article 297, paragraph (d), the validity of vesting orders and of orders for the winding up of businesses or companies, and of any other orders, directions, decisions or instructions of any court or any department of the government of any of the high contracting parties made or given, or purporting to be made or given, in pursuance of war legislation with regard to en-

emy property, rights and interests is confirmed. The interests of all persons shall be regarded as having been effectively dealt with by any order, direction, decision or instruction dealing with property in which they may be interested, whether or not such interests are specifically mentioned in the order, direction, decision, or instruction. No question shall be raised as to the regularity of a transfer of any property, rights or interests dealt with in pursuance of any such order, direction, decision or instruction. Every action taken with regard to any property, business, or company, whether as regards its investigation, sequestration, compulsory administration, use, requisition, supervision, or winding up, the sale or management of property, rights or interests, the collection or discharge of debts, the payment of costs, charges or expenses, or any other matter whatsoever, in pursuance of orders, directions, decisions, or instructions of any court or of any department of the government of any of the high contracting parties, made or given, or purporting to be made or given, in pursuance of war legislation with regard to enemy property, rights or interests, is confirmed: Provided that the provisions of this paragraph shall not be held to prejudice the titles to property heretofore acquired in good faith and for value and in accordance with the laws of the country in which the property is situated by nationals of the allied and associated powers.

[2] Annex 2. No claim or action shall be made or brought against any allied or associated power or against *any person* acting on behalf of or under the direction of any legal authority or department of the government of such a power by Germany or *by any German national wherever resident* in respect of any act or omission with regard to his property, rights or interests during the war or in preparation for the war. Similarly no claim or action shall be made or brought against *any person* in respect of any act or omission under or in accordance with the exceptional war measures, laws or regulations of any allied or associated power.

Annex 3. In article 297 and this annex the expression "exceptional war measures" includes measures of all kinds, legislative, administrative, judicial or others, that have been taken **or**

We emphasize "for whatsoever motive." Clearly by this phrase in the treaty the government aimed to prevent actions involving a consideration and determination as to whether the acts of its agents were lawful or merely colorable; it deemed it wise to protect its officials and those acting under them, from the ofttimes laborious defense in judicial proceedings of just such claims as are made in these cases; but, that no injustice result to the aliens, it remitted German nationals, *wherever resident*, to their own country for indemnity for any wrongs that may have been done them not only through the proper exercise of their duties by United States officials, but also for acts done "for whatsoever motive," including therefore wrongful acts done merely under color of office. The treaty thereby closed the door to judicial investigation of the motives of those so acting.

[4] But plaintiffs contend that, if the treaty be so interpreted, it violates the Fifth Amendment, applicable as this is to residents whether citizen or alien; Heins moreover was not by statute or presidential proclamation declared an enemy alien. He was nevertheless, as a German national, an enemy, though friendly. As such, he was subject equally with Klein to the exercise of the government's war powers. The Trading with the Enemy Act did not aim to exert these powers to the fullest extent; the government was under no constitutional prohibition from confiscating the property of the enemy's nationals, whether resident or nonresident. And those powers, in the language of Miller v. U. S., 11 Wall. 268, 303, 20 L. Ed. 135, "are not affected by the restrictions imposed by the Fifth and Sixth Amendments." U. S. v. Chemical Foundation, Oct. 11, 1926, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. ——; Munich Reinsurance Co. v. First Reinsurance Co. (C. C. A.) 6 F.(2d) 742, and cases cited.

The war powers may be exerted as well by the treaty which aims to end the war as by earlier legislation. The amended bills did not in any way obviate the foregoing objections. For this reason, as well as that in any event there was no abuse of discretion

---

will be taken hereafter with regard to enemy property, and which have had or will have the effect of removing from the proprietors the power of disposition over their property, though without affecting the ownership, such as measures or supervision, of compulsory administration, and of sequestration; or measures which have had or will have as an object the seizure of, the use of, or the interference with enemy assets, *for whatsoever motive*, under whatsoever form or in whatsoever place.

in refusing leave to amend after so long a delay, the denial involved no error.

Decrees affirmed.

HOUGH, Circuit Judge, concurred in this decision, but had no opportunity to read the opinion.